UNITED STATES of America and William E. Lucas, Special Agent

v.

Robert Benson PAYNE, as President of Tower Land & Investment Company and as President of Taurus Corporation.

No. CA 3–78–1287–C.

United States District Court, N. D. Texas, Dallas Division.

June 16, 1980.

Kenneth J. Mighell, U.S. Atty., Dallas, Tex., for plaintiffs.

Robert L. Trimble, Winstead, McGuire, Sechrest & Trimble, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

The United States and its Agent, Mr. Lucas, seek to enforce two summons under Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954.[1] The two summons, dated April 5, 1978, direct Respondent to appear and produce records of two corporations, Tower Land and Investment Company and Taurus Corporation.

The two summons were not served upon Respondent personally; nor were they left at "his last and usual place of abode . ." as required by § 7603 of the Internal Revenue Code of 1954.[2] They were served on Respondent's attorney, Mr. Robert Trimble. Respondent and Mr. Trimble did appear as directed by the summons. But Respondent produced no records and did not testify upon the advice of Mr. Trimble.[3]

Respondent resists enforcement of the summons on three grounds. They are stated in his *Brief* of May 14, 1980, at 1 as:

---

1. § 7402(b) reads:
(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data [, and]
§ 7604(a) reads:
(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

2. § 7603 reads:
A summons issued under section 6420(e)(2), 6421(f)(2), 6424(d)(2), 6427(g)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty.

3. The only evidence in the record as to what occurred on that day appears at 6 and 7 of the *Transcript of the Hearing on Petition to Enforce Internal Revenue Service Summons*, held on December 4, 1978.
Petitioner Lucas testified as follows upon questioning by Mr. Kenneth J. Mighell, United States Attorney for the Northern District of Texas, starting at line 17:
Q. On the date indicated in the summons, April 24, 1978, did Mr. Payne appear?
A. Mr. Payne along with Mr. Trimble did appear in the office in Fort Worth.
Q. What transpired at that time?
A. At that time they indicated that they were—Mr. Trimble said he was going to suggest Mr. Payne take his Fifth Amendment rights and not comply with the summons or not give us information at that time.
Q. Did Mr. Payne produce any records at that time?
A. No, sir, he did not.
Q. Did he offer any testimony at that time?
A. No, sir, he did not.

1. Neither Summons was served in the manner required by Section 7603 of the Internal Revenue Code.

2. The Summonses seek information already in the possession of the Government delivered to it pursuant to summonses issued on August 23, 1977.

3. The Summonses were issued in bad faith and solely for purposes of furthering criminal prosecution against Robert B. Payne and not for civil purposes. Each contention will be dealt with in turn.

### 1.

There is no doubt but that § 7603 of the Internal Revenue Code of 1954 was not strictly complied with. So there are two legal issues which must be decided. First, is strict compliance required? Second, can strict compliance be waived by the summoned party?

The only case in point is *United States v. Myslajek*, 568 F.2d 55 (8th Cir.1977) which answered both questions affirmatively. *Myslajek* is not, of course, precedent in this circuit. Petitioners say the first question should be answered in the negative in this circuit, and, Respondent says that the second question should be answered in the negative.

■ This Court concludes that the Eighth Circuit panel was correct and is therefore left with a question of fact as to Respondent's waiver of strict compliance.

■ The only testimony before the Court that is pertinent is quoted in footnote 3. It is clear that Respondent refused to produce documents or to testify on substantive grounds, not procedural grounds. This is square with the situation in *Myslajek*, so Respondent waived the procedural defect. As the Eighth Circuit held, at 57, Petitioner Lucas could have immediately remedied the procedural defect by serving Respondent personally, if complaint had been made then. It should also be noted that Respondent was accompanied by counsel who apparently spoke for Respondent at the time when compliance with the summons was refused.

### 2.

■ Respondent contends that the United States has the summoned documents in its possession so it cannot seek them again because of the Supreme Court's ruling in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) that duplicate information may not be sought.

Respondent was served with two summons on August 23, 1977, by Special Agent Garry W. Parrish of the Memphis, Tennessee Office of the Internal Revenue Service. These summons were substantially complied with on September 9 and 10, 1977. At that time, certain documents were copied by Special Agent Parrish or Petitioner Lucas, at Parrish's direction. Counsel for the Parties have stipulated to a list which is a compilation of the items sought in the April 5, 1978, summons which both Special Agent Parrish and Petitioner Lucas have testified are not in their respective possessions.

Respondent does not contend that any other agent or agency of the United States has these documents in his, her or its possession. Therefore, as to the stipulated documents, Respondent's second contention must fail.

### 3.

■ When Special Agent Parrish summoned Respondent in August of 1977, he told Respondent and Respondent's counsel that neither the corporations nor Respondent were then under investigation. At that time though, Parrish had reason to believe that Respondent had not filed income tax returns as required by the Internal Revenue Code of 1954. He had sent an inquiry to the Regional Service Center which covers the area in which Respondent resides and received back a report that there were no returns on file that Respondent had made. This information was conveyed to Petitioner Lucas.

Respondent contends that this shows bad faith on the part of the government.[4] This

4. See *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

Court disagrees. This is an insufficient showing of bad faith or trickery or deceit.

Petitioner Lucas had sent his own inquiry as to returns made by Respondent on August 16, 1977, after being apprised by Special Agent Parrish of the results of his inquiry. He received the same negative reply on September 26, 1977, a date subsequent to the compliance with the Parrish summons by Respondent.

It is true that either Special Agent Parrish gave Petitioner Lucas a copy of the microfilm of the documents that were copied either on September 9 or 10, 1977, or sometime in the fall of 1977. But these were the documents that Parrish wanted in his investigation of another taxpayer. Some of the documents microfilmed did pertain to Respondent but were legitimately copies for use in the investigation of the other taxpayer. They were needed, as Special Agent Parrish testified, so that a comparison could be made of the financial transactions between the other taxpayer and the two corporations and the transactions between another individual, Respondent, who stood in the same relationship to the corporations as the other taxpayer.

Also, Petitioner Lucas was not formally assigned to the investigation of Respondent until February, 1978, and a Revenue Agent, with only civil responsibilities, was assigned to the investigation in March, 1978.

Besides there being no bad faith on the part of the United States as required by *LaSalle*, supra, it must be remembered that the documents summoned are not Respondent's documents. They are the records of the corporations. Respondent has not contended that they are anything other than the records of the two corporations. Therefore, Respondent can make no objection to producing them on Fifth Amendment grounds.[5]

As all three of Respondent's contentions fail and Petitioners have shown themselves to be entitled to enforcement of the summons, judgment will be entered enforcing the summons.

5. *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944).