UNITED STATES of America, Petitioner,

v.

HAMILTON FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Respondents.

Nos. 82 MISC 0395–82 MISC 0401.

United States District Court, E.D. New York.

June 28, 1983.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The United States of America, petitioner, seeks to enforce two sets of Internal Revenue Service ("IRS") third-party summonses. They were issued by the IRS pursuant to Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602 as part of its investigation of the income tax liability of Harvey Kleinman for the period January 1, 1977 through December 31, 1980. Respondents are seven "third-party record keepers," as defined in 26 U.S.C. § 7609(a)(3). The taxpayer has instructed respondents not to comply with these summonses and has intervened in this proceeding pursuant to 26 U.S.C. § 7609(b). The Court has jurisdiction to enforce the summonses pursuant to 26 U.S.C. §§ 7402 and 7604.

Taxpayer—with a legion of procedural objections suggesting a Stalingrad defense—argues that the summonses should not be enforced for the following reasons: (1) The IRS sent taxpayer's notice of the service of the summonses to 10346 *N.E.* 5th Ct. when taxpayer, in fact, resides at 10346 *N.W.* 5th Ct. (2) The thirteen summonses served upon respondents are unspecific and irrelevant. In addition, facial defects appear upon (a) the thirteen summonses; (b) the seven petitions to enforce those summonses; (c) the seven declarations of IRS Special Agent Brozen in support of those petitions to enforce; and (d) the orders to show cause issued by the Court to respondents. (3) A conspiracy against taxpayer exists between Special Agent Brozen and taxpayer's former employer. (4) Special Agent Brozen failed to reveal to the Court in his declaration that respondent Maspeth Federal Savings and Loan Association had already produced documents requested in the original summonses issued to Maspeth.

## DISCUSSION

### (I) NOTICE TO TAXPAYER

Taxpayer argues that the notification requirements of 26 U.S.C. § 7609 must be enforced *strictissimi juris,* or else the third-party summonses must be quashed and the Court's Orders to Show Cause vacated. Section 7609 provides in pertinent part:

Sufficiency of notice—Such notice shall be sufficient if ... such notice is served in the manner provided in Section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned....

26 U.S.C. § 7609(a)(2).

Thus, under the statute, notification to the taxpayer that his records have been summoned from a third-party recordkeeper is sufficient if the notice is served: (1) in accordance with § 7603; or (2) by certified or registered mail to the taxpayer's last known address. In addition, the notice must be accompanied by a copy of the summons which has been served upon the third-party recordkeeper and must contain directions for staying compliance with the summons. 26 U.S.C. § 7609(a)(1).

Section 7603 governs service of the underlying summons upon the third-party recordkeeper. Section 7609 governs service of notification upon the taxpayer that his records have been summoned from the third-party recordkeeper.

■ The taxpayer alleges that the notice served upon him pursuant to § 7609 was

defective because the notification was mailed to the wrong address. Contrary to taxpayer's assertion, however, strict compliance with § 7609 is not required. Taxpayer's reliance on *United States v. Myslajek,* 568 F.2d 55 (8th Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978); and *United States v. Payne,* 491 F.Supp. 74 (N.D.Tex.1980), *aff'd* 648 F.2d 361 (5th Cir.), *cert. denied,* 454 U.S. 1032, 102 S.Ct. 570, 70 L.Ed.2d 476 (1981), is misplaced. Those cases held that the procedural requirements of § 7603 for serving the person named in the summons itself must be strictly observed. The cases do not deal with the distinct problem of serving the taxpayer (under § 7609) with notice that his records are being sought from a third party.

The sufficiency of the notice to the taxpayer must be judged by different standards since its only purpose is to apprise the noticee[1] of an event that has already occurred. R. Fink, Tax Fraud—Audits Investigations, Prosecutions, Vol. 1, § 7.05[2] at 7–53 (MB 1981). Here, the notice was mailed in a timely fashion by registered or certified mail, and it contained all the required additional documents. The only defect was that the notices were mailed to 10346 *N.E.* 5th Ct. when the taxpayer's last

known address and residence was 10346 *N.W.* 5th Ct. Despite this clerical error, the taxpayer noticee received the necessary papers.[2] He was entitled to no more. *See United States v. Bank of Moulton,* 614 F.2d 1063 (5th Cir.1980).[3]

I note, in passing, that the error here is partially attributable to the taxpayer himself. The power of attorney, which was signed and filed with the IRS, indicated that the correct address was "10346 *N.E.* 5th Ct., Coral Springs, Florida 33065." Surely the IRS should not be penalized for relying upon the taxpayer's own representation as to where he lived.

## (II) DEFECTS IN THE SUMMONSES SERVED UPON THE THIRD-PARTY RECORDKEEPERS

The legislative history of § 7609 indicates that Congress intended "that the noticee will be allowed to stand in the shoes of the third-party recordkeeper and assert certain defenses to enforcement which witnesses are traditionally allowed to claim but which may not be available to intervenors (under many court decisions) on [the] ground of standing." S.Rep. No. 938, 94th Cong., 2d Sess. 370 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3800.

1. The "noticee" is the person identified on the face of the summons, whose records are sought from a third-party recordkeeper, and who is entitled to receive notice of the summons and to intervene in any enforcement proceeding. *See* 26 U.S.C. § 7609(a) & (b).

2. Harvey and Bonnie Kleinman received actual notice in several ways. First, the Government properly provided copies of the certificates of compliance with § 7609 and the declarations of Special Agent Eugene Brozen, dated December 7, 1982. These documents state that notices of the summonses were duly mailed by registered or certified mail to the office of taxpayer's representative, Robert Shupack, Esq., and to the last known address of Harvey and Bonnie Kleinman. Special Agent Brozen's Supplemental Declaration, dated January 21, 1983, included copies of the signed receipts for all of the thirteen notices which were sent out for each of the thirteen summonses served on the banks. Although these notices were all mailed to the Kleinman's at the erroneous "N.E." designation, four of the thirteen receipts were signed

by Bonnie Kleinman herself. Nine were signed by a person whose name appears to be Ilona Price, and no one has questioned her authority. These notices were not returned as undeliverable. *See Tremps v. Ascot Oils, Inc.,* 561 F.2d 41 (7th Cir.1977) (defendant served with summons and complaint which otherwise clearly identified him may not avoid jurisdiction merely because he was incorrectly named; i.e., "Jr." added to end of name did not indicate that son was being sued); *Zandee v. Colisto,* 505 F.Supp. 180, 181 (W.D.Mich.1981) (summons was not procedurally defective where its certificate of service showed its mailing date and included a copy of the signed return receipt and defendant never stated that he had not received the summons).

3. There is, however, disagreement as to whether actual notice will be sufficient when some of the technical requirements of § 7609 are not met. *See B & F Associates A, Inc. v. United Penn Bank,* 493 F.Supp. 282 (N.D.Pa.1980) (summons not enforced, however, IRS did not mail § 7609 notice to taxpayer).

Thus, the taxpayer may attack the IRS summonses.

■ He argues that the summonses, which were served upon the banks pursuant to § 7603, are facially defective because the address of the taxpayer is incorrectly listed. Here again he confuses § 7603 (dealing with the summons) and § 7609 (dealing with notification that a summons has been served). The taxpayer's address does not even appear upon the face of the summonses or upon the certificates of service signed by Special Agent Brozen. The address of the noticees appears only upon the certificate which was completed in compliance with § 7609. The summonses obviously are not facially defective.

The Kleinmans next allege that because two separate summonses were issued to most of the third-party recordkeepers, the Government failed to comply with the specificity requirements of *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and violated proscriptions of Sections 7609 and 7605 against unnecessary examinations. The Kleinmans allege that "because of duplicity, confusion and defects contained in the summonses they cannot meet the traditional fairness and notice requirements of due process."

■ I disagree. The first set of summonses called for production of records relating to Harvey or Bonnie Kleinman for the period January 1, 1976 through December 31, 1979. The second set of summonses required the production of records relating to Harvey or Bonnie Kleinman for the period January 1, 1980 through December 31, 1980. After service of the initial set of summonses, Kleinmans' attorney stayed compliance by the banks. The second set of summonses indicated that the materials being sought therein were in addition to the materials previously sought. There can be no doubt or confusion as to which of the banks' records were being sought.

Nor do the second summonses constitute the type of "unnecessary examinations" prohibited by § 7605(b). The statute restricts the IRS to one inspection of a taxpayer's books of accounts for each taxable year. 26 U.S.C. § 7605(b). Apart from the fact that there has been *no* inspection of records pursuant to the first summonses (the taxpayer's attorney stayed compliance with the initial summonses), it should be noted that "the statutory restriction against second examination applies only to the taxpayer's own records and not to records of third parties like the Bank." *United States v. Chemical Bank,* 593 F.2d 451, 458 (2d Cir.1979).

I find no defect in the summonses that violates the traditional fairness and notice requirements of due process. Both sets of summonses specify with sufficient particularity the identity of the person whose records are sought, the records sought, and the period of time for which they are sought.

■ In addition, the requested documents meet the materiality and relevancy requirements imposed by 26 U.S.C. § 7602. That standard requires the Government merely to show that the documents sought "might throw light upon the correctness of the return period." *United States v. Harrington,* 388 F.2d 520, 523 (2d Cir.1968).

■ Here, the declaration of Special Agent Brozen of December 7, 1982, states that he was assigned to investigate allegations that Harvey Kleinman failed to report substantial portions of his income on his personal income tax returns filed for 1977–1980; that Bonnie Kleinman is Harvey Kleinman's wife; that the summonses were issued as part of this investigation; that the material sought is not in the possession of the Internal Revenue Service and that the material sought may be relevant to determine the correct tax liability of Harvey Kleinman. Where, as here, the financial records sought from third-party recordkeepers are those of the taxpayer himself and of his wife, the relevancy of the records is readily apparent. *See United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978) (records reasonably expected to reveal information sought).

■ While the taxpayer's liability for 1976 is not under investigation, the records sought for 1976 are relevant in that they

may throw light upon the correctness of his return for the following year, 1977, which is under investigation.

◼ Lastly, there is a separate argument pertaining to the summons which was served upon respondent Herzfeld & Stern. Unlike the other six banks involved in this proceeding, Herzfeld and Stern was served with only one summons on November 23, 1981. The taxpayer alleges that this summons is vague and unclear because it states that the period of tax liability in question is 1977–1979, while in the petition to enforce that summons the declaration of Special Agent Brozen states that the period of tax liability under investigation is 1977–1980. The summons itself, however, is not vague or unclear. The documents requested are for the period January 1, 1976—December 31, 1979. The taxpayer may not quash this summons simply because the IRS did not choose to issue a second summons for the period January 1, 1980—January 31, 1980 as it did with respect to the other banks involved.

◼ The taxpayer also challenges the summons issued to Herzfeld & Stern on the ground that it seeks, inter alia, "any and all correspondence relating to the above individuals [Harvey or Bonnie Kleinman]" and, therefore, lacks the degree of particularity and relevancy required by § 7602. I find this argument meritless.

The Government's request is not so broad as to be burdensome to the bank. It is limited to the correspondence relating to Harvey and Bonnie Kleinman for a period of four years. The summons calls only for documents and information "regarding any and all brokerage accounts in the names of Harvey S. Kleinman or Bonnie M. Kleinman, including but not limited to account No. 05–32741–1–8". This is sufficiently specific.

III. ALLEGED FACIAL DEFECTS IN THE PETITIONS, DECLARATIONS OF SPECIAL AGENT BROZEN AND ORDERS TO SHOW CAUSE

◼ The intervenors also challenge the seven enforcement petitions that were served upon the third-party recordkeepers because five of them erroneously name Special Agent Brozen as the taxpayer. The other two petitions are objected to because they do not specify whether it is Harvey S. Kleinman or Bonnie M. Kleinman who allegedly understated gross income.

I find both these objections frivolous. It is obvious that Special Agent Brozen is not investigating himself; the petitions make that clear. It is equally obvious that the purpose of the investigation is to ascertain the correct tax liability of Harvey Kleinman.

◼ The taxpayer also challenges the declarations of Special Agent Brozen because they do not state whether the Kleinmans actually received the summonses. Such a statement was unnecessary. The declarations state that Special Agent Brozen complied with the notification procedures required by § 7609. In addition, the Supplemental Declaration of Special Agent Brozen included copies of the certified mail receipts.

The taxpayer also seeks to vacate the seven orders to show cause because they directed that copies of those orders and all pleadings be mailed to the taxpayer at incorrect addresses.

◼ I adopt the approach of the court in United States v. Bank of Moulton, 614 F.2d 1063, 1066 (5th Cir.1980), which, in an IRS enforcement case, refused to elevate form over substance. The clerical errors in the petitions, declarations, and orders to show cause did not prejudice the taxpayer. See Vega Matta v. Alvarez de Choudens, 440 F.Supp. 246, 248, aff'd, 577 F.2d 722 (D.P.R. 1977) (clerical defects do not warrant quashing of summons).

IV. CONSPIRACY BY THE IRS AGAINST TAXPAYER

Taxpayer also assails the good faith of the IRS. He claims that Agent Brozen entered into an agreement with taxpayer's

former employer and others with whom taxpayer had done business to destroy his business for the benefit of the former employer.

■ Under *United States v. Powell, supra,* an IRS summons will be enforced if the IRS demonstrates "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *Id.* 379 U.S. at 57–58, 85 S.Ct. at 254–255. When the IRS demonstrates compliance with these standards, the taxpayer, in order to quash, must go forward with evidence that the enforcement of the summons would be an abuse of process. *United States v. LaSalle National Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978). The Court in *Powell* stated that it would constitute an abuse of process "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.*

In *United States v. LaSalle National Bank, supra* at 318, 98 S.Ct. at 2368, the Supreme Court further articulated the standard of "good faith" to be met in an IRS enforcement proceeding. Specifically, the IRS "must use the summons authority in good faith pursuit of the congressionally authorized purposes of § 7602." In addition, the Court in *LaSalle* noted that this "good faith" standard "requires that the Service not abandon in an institutional sense . . . the pursuit of civil tax determination or collection." *Id.*

■ Here, the declaration of Special Agent Brozen states that: (1) the summonses were necessary to investigate allegations that Harvey Kleinman failed to report portions of his income for 1977 through 1980; (2) the IRS did not possess the information sought at the time it was summoned; and (3) all required administrative procedures were followed. He further

states that enforcement of the summonses is necessary to determine the *civil* liability of the taxpayer. The Kleinmans, on the other hand, have not submitted any evidence in support of their conclusory allegation of conspiracy.

Accordingly, I find that the taxpayer has not met his heavy burden of establishing bad faith by the IRS. *Id.* at 316, 98 S.Ct. at 2367; *see United States v. O'Henry's Film Works,* 598 F.2d 313, 319–320 (2d Cir.1979); *cf. United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 42 (2d Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978).

## V. MOTION TO TAKE DEPOSITION OF SPECIAL AGENT BROZEN

The Kleinmans also seek to depose Special Agent Brozen arguing that (1) Brozen has improperly sought information from third-party recordkeepers for a matter not involving the IRS, i.e., unrelated litigation between Kleinman and American Permac, Kleinman's former employer; (2) Brozen conspired with American Permac and others to put the Kleinmans out of business; and (3) Brozen perjured himself by failing to apprise the Court in his Declaration that Maspeth Federal Savings and Loan Association had already complied with the summons served upon it prior to the enforcement proceeding.

■ In *United States v. Morgan Guaranty Trust Co., supra,* the Second Circuit Court of Appeals affirmed the district court's denial of a taxpayer's request to depose the investigating IRS agent. The Court held that the taxpayer had failed to meet the "burden of showing an abuse of the Court's process", *Donaldson v. United States,* 400 U.S. 517, 527, 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971), by making a sufficient preliminary showing. *United States v. Morgan Guaranty Trust Co., supra* at 42 and n. 9. Here, there is even less of a showing. The taxpayer has not submitted any affidavit by a person having knowledge. Nor has the taxpayer stated any facts to support allegations of a conspiracy.

The taxpayer also seeks to depose Special Agent Brozen because Brozen's initial Declaration regarding Maspeth Federal Savings and Loan Association stated that the records summoned were not already in the possession of the IRS, when, in fact, Maspeth had already mailed those records to the IRS. The second Declaration submitted by Special Agent Brozen (dated January 21, 1983) explains that the Maspeth records were received prior to the expiration of the period in which the taxpayer was entitled to stay compliance. *See* 26 U.S.C. § 7609. Upon receipt, however, the documents were sealed without inspection and the IRS has moved for an Order authorizing the inspection of these records. *See* 26 U.S.C. § 7609(d).

Agent Brozen, in his January 21, 1983 Declaration, states that this information was inadvertently omitted from his December 7, 1982 Declaration. This affidavit obviates the need for a deposition of Agent Brozen. *See United States v. Bank of Moulton,* 614 F.2d 1063 (5th Cir.1980); *United States v. Chemical Bank,* 593 F.2d 451 (2d Cir.1979).

### MOTION TO STRIKE

Finally, the taxpayer moves to strike (1) the first Supplemental Declaration of Agent Brozen and the Government's accompanying Supplemental Memorandum of Law, dated January 21, 1983; (2) the second Supplemental Declaration of Agent Brozen, dated February 23, 1983; and (3) the Government's letter, dated March 17, 1983. The taxpayer argues that these documents were filed after the January 24, 1983 hearing without leave of the Court.

The motion is granted insofar as it seeks to strike the supplemental materials dated February 23, 1983 and March 17, 1983. Because these materials were submitted after the hearing of the motion, leave of the Court was required. The motion is denied, however, insofar as it seeks to strike materials dated January 21, 1983. These materials were submitted in the posture of a "reply" to the Kleinmans' allegations of conspiracy, fraud and perjury which were con-

tained in the motion to quash the summonses and dismiss the petitions. Accordingly, no leave of Court was required for the filing of these papers.

For all the foregoing reasons the Government's petitions to enforce the summonses in question are granted in their entirety. The taxpayers' motion to quash the summonses and dismiss the petitions or, in the alternative, to depose Agent Brozen is denied.

SO ORDERED.